IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APRIL BERNICE SEERING,

                         Plaintiff,

    v.

CELL PLUS II, INC.

                         Defendant.

OPINION AND ORDER

17-cv-625-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se plaintiff April Bernice Seering is proceeding on a claim that her former employer, defendant Cell Plus II, Inc., terminated her because she is a woman, in violation of Title II of the Civil Rights Act of 1964. Now before the court is defendant's motion for summary judgment, dkt. #13, and plaintiff's motion to file an affidavit. Dkt. #29. Because I conclude that plaintiff has failed to present evidence from which a reasonable jury could conclude that she was terminated because of her sex, I am granting defendant's motion for summary judgment. I am denying plaintiff's motion to file an affidavit, because the affidavit does not correct the deficiencies in the evidence she submitted.

Turning to the undisputed facts, I note that plaintiff failed to respond to defendant's proposed findings of fact as required by this court's summary judgment procedures and failed to properly submit any proposed findings of fact of her own. Plaintiff received a copy of those procedures twice: the court included the procedures with the Pretrial Conference Order, dkt. #9, sent to the parties, and sent plaintiff another copy of the procedures after

1

defendant filed its motion for summary judgment. Under the procedures, plaintiff was required to file a response to each of defendant's proposed findings of fact. Pretrial Conference Order, dkt. #9, at 15-17. If she wanted to file additional proposed findings of fact to be considered by the court, she was required to file a separate document setting forth her supplemental proposed findings. Id. at 16. The procedures also require plaintiff to support each supplemental proposed fact or any disputed fact with a citation to evidence. Id. Instead of following these procedures, plaintiff filed a brief in opposition to defendant's motion and attached more than 600 documents to it. Dkt. #22. Plaintiff's documents include letters filed in the Equal Rights Division proceedings, performance evaluations, letters of recommendation, photographs and several hundred pages of text messages between plaintiff and another former employee of defendant. Dkt. #22-1 – #22-8.

Because plaintiff did not cite to this evidence in support of any proposed findings of fact or in opposition to defendant's proposed findings of fact, the documents she submitted are largely unhelpful. She has not explained the relevance of most of the documents or why she believes the documents support her claim of intentional sex discrimination. Moreover, much of the evidence, such as the text messages, is inadmissible hearsay because plaintiff is attempting to rely on what a friend told her to show that defendant is being untruthful. MMG Financial Corp. v. Midwest Amusements Park, LLC, 630 F.3d 651, 656 (7th Cir. 2011) ("A party may not rely on inadmissible hearsay to avoid summary judgment."). Although plaintiff filed a motion for leave to file an affidavit in which she states that all of the evidence she submitted is "truthful and undoctored," dkt. #29, this affidavit does not

2

correct the hearsay problem. Regardless whether the documents are undoctored, plaintiff cannot rely on unsworn, out-of-court statements to create a factual dispute.

In light of plaintiff's failure to comply with this court's summary judgment procedures and failure to submit admissible evidence to dispute defendant's proposed findings of fact, I have accepted most of defendant's proposed facts as undisputed. However, because plaintiff is proceeding pro se, I have reviewed all of the documents plaintiff submitted, considered whether any document raises an obvious factual dispute and set out that dispute below. Therefore, from defendant's proposed findings of fact, I find the following facts to be material and undisputed unless otherwise noted.

UNDISPUTED FACTS

Defendant Cell Plus II, Inc. is a retail seller of U.S. Cellular products with nine locations in Wisconsin. Plaintiff April Bernice Seering worked for defendant as a senior sales associate in the Baraboo, Wisconsin store from June 26, 2007 until she was terminated on September 8, 2014. Plaintiff's performance as a senior sales associate was generally very good. She was skilled in serving customers and was a high-level performer.

In the late summer of 2014, plaintiff's manager, Anthony Lutz, witnessed plaintiff acting extremely drowsy at work and slurring her speech on three occasions. Lutz contacted Jaime Sundsmo, defendant's Director of Human Resources. (Sundsmo worked in defendant's corporate offices, not at the Baraboo store where plaintiff worked.) Sundsmo told Lutz that if plaintiff appeared drowsy to the point of not functioning appropriately at

3

work, he should ask her to step off the sales floor and request that she obtain a doctor's note indicating that she was safe and fit for duty.

On Friday, September 5, 2014, plaintiff was working on the sales floor when another employee reported to Lutz that plaintiff appeared to be extremely drowsy and was falling asleep and that a customer was telling plaintiff she needed more sleep. Lutz then called Sundsmo for advice. Sundsmo told Lutz to pull plaintiff from the sales floor and tell her she needed to obtain a doctor's note confirming that she was fit for work. Sundsmo also told Lutz to have another employee, one of plaintiff's friends, present during the meeting so that the meeting would feel less confrontational for plaintiff.

Lutz called plaintiff and another employee to the backroom of the store, told plaintiff that she appeared to be falling asleep on the sales floor and asked her to obtain a doctor's note indicating she was fit for work. Plaintiff became upset and called Sundsmo immediately. Sundmso reiterated that plaintiff needed to obtain a doctor's note to verify that she could work.

Plaintiff then returned to the backroom of the store, engaged in an argument with Lutz and told Lutz that she hated him "more than anyone" she had ever hated. Plaintiff also told Lutz that he was "screwing the store" because she was going to look for a new job. (Defendant says that plaintiff spoke in a raised voice and was acting belligerently, but plaintiff states that she was speaking at a normal volume and that no customers could have heard her.) Plaintiff then headed to the front door of the store, where she sarcastically wished another coworker "good luck" with his day and indicated that the understaffing was

"all the manager's fault." After plaintiff left, Lutz contacted Sundsmo to report plaintiff's behavior. Meanwhile, plaintiff contacted the corporate office and demanded to speak with Andy Kamla, defendant's owner. Kamla was not available and Sundsmo requested that plaintiff's call be directed to her.

Sundsmo told plaintiff that defendant was concerned for plaintiff's well-being and needed to be sure that she could provide customers a quality experience. Sundsmo encouraged plaintiff to obtain the requested fitness verification from her doctor so that the conflict could be resolved and plaintiff could return to work. Plaintiff argued angrily with Sundsmo about having to obtain a doctor's note, stating that the situation was "bullshit" and accusing Lutz and Sundsmo of targeting her. Plaintiff denied to Sundsmo that she had yelled or sworn at Lutz, but admitted that she spoke negatively about Lutz to her coworker as she exited the building. Plaintiff also said she would not be able to see her doctor until the following week, so she was essentially being forced to take time off. Sundsmo told plaintiff that defendant would work with her regarding scheduling and that plaintiff might be able to use vacation or sick time until she could obtain a note from her doctor. When plaintiff refused to discuss her options with Sundsmo, Sundsmo told plaintiff she was being suspended for the weekend, until Monday, September 8.

Sundsmo then called Lutz and told him that she had suspended plaintiff and would be meeting with plaintiff the following Monday. Lutz told Sundsmo he was "not looking for [plaintiff] to be terminated," as plaintiff's behavior was out of character. Sundsmo then talked to another employee, who told Sundsmo that plaintiff could be heard yelling in the

backroom and it was likely that customers heard her. (Plaintiff denies that she was yelling and denies customers could hear her, but she has not submitted evidence to dispute the contents of the other employee's statement to Sundsmo.) Sundsmo then reviewed the videotape of the incident from the remote camera in the backroom. There was no audio on the videotape, but Sundsmo thought that plaintiff appeared to be very angry and animated, while Lutz appeared to be calm.

On Monday, September 8, 2014, Sundsmo met with plaintiff and Lance Lannoye, the assistant manager of the store at which plaintiff worked. Sundsmo's intention was to talk to plaintiff about the incident and discuss with plaintiff the need to obtain a doctor's note before returning to work. However, Sundsmo had prepared a termination letter in case the meeting went poorly. Plaintiff appeared to be alert at the meeting. Sundsmo asked plaintiff how she was doing and how she felt about what had happened with Lutz at the store. Plaintiff responded angrily, stating that she stood by everything that had happened and that she thought Lutz was "disgusting." Plaintiff then began discussing prior incidents involving Lutz and other male employees that she believed had not been investigated thoroughly or for which she believed the male employees had not been adequately disciplined. Sundsmo responded that those incidents were not relevant and asked plaintiff whether she would take any steps to reconcile things with Lutz. Plaintiff responded that she would no longer work with Lutz and would not accept responsibility for her behavior in the store. Sundsmo then terminated plaintiff's employment.

6

OPINION

Plaintiff contends that defendant terminated her employment because she is a woman. Her claim is governed by Title VII of the Civil Rights Act, which prohibits employment discrimination based on sex. 42 U.S.C. § 2000e-2. To succeed on her claim, plaintiff must present evidence that would permit a reasonable jury to conclude that she was fired because of her sex. Mourning v. Ternes Packaging, Indiana, Inc., 868 F.3d 568, 571 (7th Cir. 2017).

Plaintiff may satisfy her burden by introducing evidence that defendant fired her because of her sex. Skiba v. Illinois Central Railroad Co., 884 F.3d 708, 719 (7th Cir. 2018). Alternatively, plaintiff may proceed through the burden-shifting framework adapted from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Id. Under the burden-shifting approach, plaintiff must come forward with evidence showing that "(1) she is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably." Id. (citing Carson v. Lake County, Indiana, 865 F.3d 526, 532–33 (7th Cir. 2017)). If the plaintiff establishes a prima facie case, the burden shifts "to the defendant to 'articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual.'" Carson, 865 F.3d at 533 (citation omitted).

"However the plaintiff chooses to proceed, at the summary judgment stage the court must consider all admissible evidence to decide whether a reasonable jury could find that the

plaintiff suffered an adverse action because of her [sex]." Id. (citing Ortiz v. Werner Enterprises, Inc., 834 F.3d 760 (7th Cir. 2016) ("Th[e] legal standard . . . is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [sex] caused the discharge or other adverse employment action. Evidence must be considered as a whole").

In this instance, plaintiff has attempted to prove intentional sex discrimination by pointing to (1) defendant's alleged lenient treatment of male employees and (2) evidence of pretext. I discuss plaintiff's evidence and arguments below.

### A. Lenient Treatment of Male Employees

Plaintiff devotes the majority of her brief in opposition to summary judgment to discussing instances in which she believes male employees engaged in improper behavior but were not terminated by defendant. It is well-established that circumstantial evidence of discrimination may include "evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment." Hasan v. Foley & Lardner LLP, 552 F.3d 520, 530 n.4 (7th Cir. 2008) (citation omitted). However, plaintiff has failed to identify any male employees who are similarly situated to her and who were treated more leniently after engaging in similar behavior.

Although "they need not be identical in every conceivable way," similarly situated employees "must be 'directly comparable' to the plaintiff 'in all material respects.'" Coleman v. Donahoe, 667 F.3d 835, 846 (7th Cir. 2012) (citation omitted). The purpose of the

8

inquiry "is to eliminate other possible explanatory variables, 'such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable'—discriminatory animus." Id. (citation omitted). "In the usual case a plaintiff must at least show that the comparators (1) 'dealt with the same supervisor,' (2) 'were subject to the same standards,' and (3) 'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" Id. at 847 (quoting Gates v. Caterpillar, Inc., 513 F.3d 680, 690 (7th Cir. 2008)).

Plaintiff makes no such showing here. Her comparator "evidence" consists primarily of arguments in her brief regarding instances in which male employees engaged in misconduct at the workplace, with no explanation of the positions the people held, their supervisors, whether Sundsmo was involved in assessing the incident or whether the employees received any discipline for their actions. For example, she says that Lutz, her manager, had inappropriate sexual conversations at work, engaged in a prank that damaged a company locker, broke a computer screen when he lost his temper, read another employee's email and called plaintiff a "fat fucking disgusting pig" at a company lunch. She also states that another male employee lost his temper with a customer and other male employees engaged in inappropriate sexual or political conversations at work. However, plaintiff has submitted no admissible evidence to support these assertions about male employees. Nor has she submitted evidence regarding how the incidents were handled by defendant and by whom. Finally, she has not shown that she held the same position as these

9

employees did, and in the case of Lutz, it is clear that he was not in the same position as plaintiff. She also has not shown that any of the employees refused to accept responsibility after engaging in misconduct or that they refused to work with their direct supervisor.

For its part, defendant submitted evidence undermining all of plaintiff's allegations and arguments regarding male employees. Defendant explains how each incident was investigated and, if the incident was substantiated, that the employee accepted responsibility and was provided coaching or was required to apologize or pay for any damage. Dft.'s PFOF, dkt. #18, ¶¶ 46-66. Plaintiff has submitted no evidence to dispute defendant's assertions.

Ultimately, plaintiff bears the burden of showing that the individuals she identifies are similarly situated and were treated more favorably than she was. Skiba, 884 F.3d at 723–24 (citing Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002) (holding that "we cannot compare [an employer's] treatment of [a plaintiff] and [a co-worker]" if plaintiff "fail[s] to meet her burden of establishing that [the co-worker] is a similarly situated employee")). Because plaintiff has failed to make this showing, her argument that defendant treated male employees more favorably fails.

### B. Evidence of Pretext

Finally, even if I assumed that plaintiff could establish a prima facie case of discrimination, defendant has offered legitimate and nondiscriminatory reasons for its decision to fire plaintiff: she refused to accept to responsibility for her disrespectful behavior toward her supervisor and stated that she would no longer work with him. To show

these reasons are pretextual, plaintiff "must present evidence suggesting that the employer is dissembling." O'Leary v. Accretive Health, Inc., 657 F.3d 625, 635 (7th Cir. 2011). "The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reasons it has offered to explain the discharge." Id. "[I]t is not 'the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie.'" Skiba, 884 F.3d at 724 (citations omitted). "To meet this burden, [plaintiff] must 'identify such weaknesses, implausibilities, inconsistencies, or contradictions' in [defendant's] asserted reason[s] 'that a reasonable person could find [them] unworthy of credence.'" Id. (citations omitted).

Plaintiff contends that defendant's proffered justifications for her termination are dubious for multiple reasons, none of which are persuasive. She argues that she was a good employee who received consistently positive performance reviews. She also points to glowing reviews from customers she helped, arguing that she would never engage in the aggressive behavior that defendant has attributed to her. Finally, she contends that defendant has provided shifting explanations for firing her because defendant reported falsely to the Department of Workforce Development that it fired plaintiff because she became argumentative and refused to consider defendant's request that she provide a doctor's note. Plt.'s Br., dkt. #22, at 1. Plaintiff says that she made an appointment to see her doctor so that she could obtain the requested note.

However, none of these arguments suggest that defendant's proffered reasons for

11

firing plaintiff are false.  Plaintiff's evidence that she was a good employee does not refute defendant's evidence showing that she became upset and disrespectful when her manager asked her to provide a doctor's note.  She has not refuted defendant's evidence that she refused to accept responsibility for the incident and told Sundsmo that she hated Lutz and would not continue working with him.  Finally, nothing in defendant's submissions to the Department of Workforce Development contradicts defendant's purported basis for firing her.  It is not contradictory for defendant to say that plaintiff was fired for refusing to consider defendant's request that she obtain a doctor's note.  Defendant has submitted undisputed evidence that it fired plaintiff after asking her to obtain a doctor's note because plaintiff responded angrily and stated that she would not return to work at the same store as Lutz.  It is immaterial whether plaintiff later decided to obtain a doctor's note.

In sum, plaintiff's evidence is not sufficient to create a genuine dispute of material fact as to the reason defendant terminated her employment.  Therefore, plaintiff has failed to provide a basis for finding her a victim of intentional discrimination.


ORDER

IT IS ORDERED that

1. Plaintiff April Bernice Seering's motion for leave to file an affidavit, dkt. #28, is DENIED.

2. Defendant Cell Plus II, Inc.'s motion for summary judgment, dkt. #13, is GRANTED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 29th day of November, 2018.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge